## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | | |
|---|---|---|
| **PENNY NICHOLS CORN & TWYLA JENNINGS** | § § § § | **PLAINTIFFS** |
| **v.** | § § | **Civil No. 3:17cv827-HSO-LRA** |
| **MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY**; **ALBERT SANTA CRUZ**, *individually and in his official capacity as former Commissioner of the Mississippi Department of Public Safety*; **& MARSHALL FISHER**, *in his official capacity as Commissioner of the Mississippi Department of Public Safety* | § § § § § § § § § § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS [18] [20] TO DISMISS AND FOR QUALIFIED IMMUNITY AND DISMISSING CASE

BEFORE THE COURT are the Motions [18] [20][1] to Dismiss and for

Qualified Immunity filed by Defendants Mississippi Department of Public Safety,

Albert Santa Cruz, in his official and individual capacities, and Marshall Fisher, in

his official capacity.   This suit arises out of the termination of Plaintiffs Penny

Nichols Corn and Twyla Jennings from their employment with the Mississippi

Department of Public Safety's Division of the Mississippi Office of Highway Safety.

---

[1] Although Defendants filed two separate Motions, the arguments contained in both are duplicative. Mot. [18] [20].  Similarly, the docket reflects duplicative Responses and Replies filed by the parties. Although the Court has reviewed each document separately, it will cite only to the first document filed by each respective party as follows: Defendants' Motion [18] and Memorandum in Support [19]; Plaintiffs' Response [27] and Memorandum in Support [28]; and Defendants' Reply [34].  The Court will not cite documents [20] [21] [29] [30] [35].

Plaintiffs allege that Defendants terminated them in retaliation for their notifying the National Highway Traffic[2] Safety Administration of fraudulent claims for reimbursement paid in connection with federal grants.

Because Plaintiffs' claims against Defendants are barred by Eleventh Amendment immunity and because Plaintiffs have otherwise failed to state a claim for First Amendment retaliation, the Court finds that the Motions [18] [20] to Dismiss and for Qualified Immunity should be granted and that this case should be dismissed.

## I. BACKGROUND

### A.   Relevant facts

Plaintiff Penny Nichols Corn was employed as the Office Director for the Mississippi Department of Public Safety's ("MDPS") Division of the Mississippi Office of Highway Safety.  Am. Compl. [6] at 3.  Plaintiff Twyla Jennings was also employed by the MDPS as the Division II Director for the Mississippi Office of Highway Safety.  According to Plaintiff Corn, the Governor of Mississippi had appointed her as "the Governor's representative of the Mississippi Office of Highway Safety."  *Id.*  Plaintiffs contend that "at all times material," Plaintiff Jennings, "was acting as [Plaintiff Corn's] assistant."  *Id.* at 4-5.

Plaintiffs allege that the MDPS/Mississippi Highway Patrol received two grants from the National Highway Traffic Safety Administration ("NHTSA") for

---

[2] Plaintiffs refer to the "National Highway Transportation Safety Administration," Am. Compl. [6], when in fact it appears that the entity's correct name is the National Highway Traffic Safety Administration, which is "an administration in the Department of Transportation," 49 U.S.C. § 105.

enforcement of laws prohibiting driving while under the influence. *Id.* These grants were intended to be used to finance overtime pay for highway patrolmen, or state troopers, to write and prosecute citations to impaired drivers. *Id.* at 3-4. Plaintiffs allege that they "produced" these grants, although it is not entirely clear what Plaintiffs' use of that term is intended to mean.[3] *Id.*

Plaintiffs allege that they learned from a highway patrolman that the Office of the Mississippi Highway Patrol was conducting an Internal Affairs investigation into whether state troopers were writing "ghost tickets" in order to receive overtime pay under the NHTSA grants. *Id.* at 4. Some troopers were purportedly receiving overtime pay for writing tickets to drivers who were dead or did not exist, and thus who would never be prosecuted. *Id.* Plaintiff Corn inquired about the investigation within her office, and notified the NHTSA by e-mail and telephone that Internal Affairs was investigating the matter. *Id.* at 4-5. Plaintiff Corn also copied the Commissioner of the MDPS, who at that time was Defendant Albert Santa Cruz ("Santa Cruz"), and others within the MDPS and Highway Patrol, on her e-mail to the NHTSA grant administrator, Brian Jones. *Id.* at 5. According to the Amended Complaint, the NHTSA immediately ceased all funding for the grants. *Id.*

Plaintiffs allege that approximately twelve days later Defendant Santa Cruz terminated Plaintiff Corn as a direct and proximate result of her notifying the NHTSA. *Id.* at 6. Soon afterwards and allegedly for the same reason, Defendant

---

[3] One possibility is that by "produce," Plaintiffs mean that they were responsible for or involved in applying for, monitoring, or administering the grants, but again Plaintiffs do not explain further. *See Produce vb.*, Black's Law Dictionary (10th ed. 2014) ("To bring into existence; to create.").

Santa Cruz terminated Plaintiff Jennings.  *Id.*  Plaintiffs contend that Plaintiff Jennings "at all times material was acting as [Plaintiff Corn's] assistant," and that they "continually discussed the 'ghost[-]ticket' issue and what their response should be to inquiries from the NHTSA."  *Id.* at 4-5.  Sometime after Plaintiffs were terminated, Defendant Marshall Fisher ("Fisher") replaced Defendant Santa Cruz as the Commissioner of the MDPS.  *See id.*

B.   Procedural history

Plaintiffs Corn and Jennings filed suit on October 16, 2017, naming the following Defendants: the MDPS; Albert Santa Cruz, in his individual and official capacities as the former Commissioner of the MDPS; and Marshall Fisher, in his official capacity as the current Commissioner of the MDPS (collectively "Defendants").  Compl. [1].  The original Complaint alleged that Defendants violated Plaintiffs' First Amendment rights by firing them in retaliation for notifying the NHTSA of the fraudulent claims for reimbursement.  *Id.*  Plaintiffs subsequently filed an Amended Complaint [6], adding state common-law claims for wrongful discharge, which under the circumstances here are subject to the Mississippi Tort Claims Act, Miss. Code. Ann. § 11-46-1, *et seq.* ("MTCA") (waiving the state's immunity from liability from claims for money damages arising out of the torts of its employees who act in the course and scope of their employment).  Am. Compl. [6].

Plaintiffs seek injunctive relief from the MDPS and Defendant Fisher in his official capacity; a declaratory judgment that the actions of Defendants Santa Cruz

and Fisher violated the First Amendment to the United States Constitution and the Mississippi Tort Claims Act; and monetary damages from the MDPS and Defendant Santa Cruz in his individual capacity. *Id.* at 10-12.

In response to the Amended Complaint [6], Defendants filed an Answer and affirmative defenses. Answer [16]. Subsequently, Defendants filed the instant Motions [18] [20] to Dismiss and for Qualified Immunity. Defendants contend that Plaintiffs' claims against the MDPS are barred by the state's immunity under the Eleventh Amendment to the United States Constitution.[4] Mem. in Support [19] at 6-8. Defendants further posit that Plaintiffs have failed to state a First Amendment retaliation claim against Defendant Santa Cruz in his individual capacity or against Defendant Fisher in his official capacity. *Id.* at 9-10. In the alternative, Defendants maintain that Defendant Santa Cruz in his individual capacity is entitled to qualified immunity. *Id.* at 9-10. Finally, Defendants argue that Mississippi law does not provide a cause of action against individuals for wrongful discharge and that the MTCA affords Defendants immunity from individual-capacity claims under state law. *Id.* at 12-13.

Plaintiffs respond that they have stated a First Amendment retaliation claim and that, because this right was clearly established at the time of their termination, Defendant Santa Cruz is not entitled to qualified immunity. Resp. [27]; Resp. Mem.

---

[4] Defendants also argue that Plaintiffs' claims for monetary damages against Defendant Fisher in his official capacity are barred by the Eleventh Amendment. Mem. in Support [19] at 7-8. However, the Amended Complaint [6] only advances claims for monetary damages against the MDPS under state law, and against Defendant Santa Cruz in his individual capacity under federal law. Am. Compl. [6] at 10-11. The only remedies sought against Defendant Fisher in his official capacity are for injunctive and declaratory relief. *See id.*

[28] at 2-10; 12-28.  Plaintiffs maintain that their claims against Defendant Santa Cruz for monetary damages are not precluded by Eleventh Amendment immunity, and that they have stated a valid state-law claim for wrongful discharge.  Resp. Mem. [28] at 11, 28.  Plaintiffs did not make any request to amend their pleadings in their Response, and at no time have they otherwise sought leave to amend their First Amended Complaint [6].  *See* Resp. [27]; Resp. Mem. [28].

## II. DISCUSSION

A.   Motions to dismiss under Federal Rule of Civil Procedure 12(c)

Defendants seek dismissal of this case on two grounds: (1) that the Court lacks subject-matter jurisdiction under the Eleventh Amendment; and (2) that Plaintiffs have failed to state a claim pursuant to Federal Rule of Civil Procedure 12(c).[5]  Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after a responsive pleading has been filed and the pleadings have closed.  *See* Fed. R. Civ. P. 12(b)-(c).

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(c) is subject to the same standards as a motion to dismiss pursuant to Rule 12(b)(1).  *See White Oak Realty, LLC v. U.S. Army Corp of Eng'rs*, No. CV 13-4761, 2016 WL 355485, at *2 (E.D. La. Jan. 28, 2016); 5C Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed.).  "A case is properly dismissed for lack of subject[-]matter jurisdiction when the court lacks the statutory or constitutional power to

---

[5] Although Defendants title their Motion [18] as a "Motion to Dismiss," rather than one for "Judgment on the Pleadings," Defendants correctly cite that Federal Rule of Civil Procedure 12(c) controls.  Mem. in Support [19] at 3-4.

adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143

F.3d 1006, 1010 (5th Cir. 1998).[6]

"A motion under Rule 12(c) for failure to state a claim is subject to the same

standards as a motion to dismiss under Rule 12(b)(6)." *In re Great Lakes Dredge &

Dock Co. LLC*, 624 F.3d 201, 209-10 (5th Cir. 2010).[7]  To survive a motion to dismiss

under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The court's task is to

determine whether the plaintiff has stated a legally cognizable claim that is

plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V

(U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In deciding whether a complaint states a valid claim for relief, a court must

accept all well-pleaded facts as true and view those facts in the light most favorable

---

[6] While under the 12(b)(1) standard, the Court may consider undisputed facts in the record along with its resolution of disputed facts, here the Court has only considered the pleadings.  *See Williams v. Wynne*, 533 F.3d 360, 364-65, 365 n.2 (5th Cir. 2008) (quoting *Clark v. Tarrant Cty.*, 798 F.2d 736,741 (5th Cir. 1986)) ("[A] court may dismiss for lack of subject matter jurisdiction based on either '(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'").

[7] The Fifth Circuit has noted that while it has held that "judicially noticed facts" may be considered in resolving a Rule 12(c) motion, it "has not been consistent in reciting the standard that governs the documents that a district court may properly consider."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002).  Although Plaintiffs have attached documents to their Response that are outside the pleadings, the Court confines its analysis to the pleadings. However, the Court has reviewed the documents submitted by Plaintiffs and has determined that they would not alter the result.

to the plaintiff.  *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015).  However, the Court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

B.      Immunity under the Eleventh Amendment

Defendants assert that they are entitled to immunity under the Eleventh Amendment to the United States Constitution.  Mem. in Support [19] at 6-8. Plaintiffs counter that their federal-law claims against Defendant Santa Cruz in his individual capacity for monetary damages are not precluded and that "the claims against now Commissioner Fisher in his official capacity and against the MDPS remain well founded for injunctive and declaratory relief."  Resp. Mem. [28] at 11. Plaintiffs also make the statement that the MDPS is a "viable defendant under the *McArn* line of cases."  *Id.*

Because the MDPS is entitled to Eleventh Amendment immunity on all of Plaintiffs' federal- and state-law claims against it, the Court will dismiss Plaintiffs' claims against the MDPS without prejudice.  With the exception of Plaintiffs' claims requesting prospective relief under federal law, Defendants Santa Cruz and Fisher in their official capacities are also entitled to Eleventh Amendment immunity on all of Plaintiffs' federal- and state-law claims, and these claims will likewise be dismissed without prejudice.

1.      Plaintiffs' federal- and state-law claims against the MDPS

The Eleventh Amendment provides that federal courts cannot exercise

8

jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

The Eleventh Amendment serves as a jurisdictional bar to lawsuits brought in federal court against state governments and state agencies that are considered "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 69 (1989); *Williams v. Dall. Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001). Mississippi federal district courts have repeatedly held that the MDPS is an "arm of the state" entitled to Eleventh Amendment immunity. *See Whitfield v. City of Ridgeland*, 876 F. Supp. 2d 779, 783 (S.D. Miss. 2012); *Gazzo v. Miss. Dep't of Pub. Safety*, 1:09cv719, 2011 WL 1841258, at *1 (S.D. Miss. May 13, 2011); *Brown v. Simpson*, 4:08cv117, 2009 WL 2449898 at *1 n.1 (N.D. Miss. Aug. 7, 2009); *King v. Miss. Highway Patrol*, 827 F. Supp. 402, 403-04 (S.D. Miss. 1993).

Only if a state and its agencies waive, or if Congress intentionally abrogates, a state's sovereign immunity may a plaintiff pursue a lawsuit against the state or its agencies in federal court. *Will*, 491 U.S. at 66. "[A] sovereign enjoys two kinds of immunity that it may choose to waive or retain separately —immunity from suit and immunity from liability." *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 252-53 (5th Cir. 2005). A state waives its sovereign immunity where it clearly declares its

9

intent to waive immunity, generally when "(1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction." *Id.* at 241.

Congress did not abrogate a state's Eleventh Amendment immunity when it enacted 42 U.S.C. §1983. *See* 42 U.S.C. §1983; *Will*, 491 U.S. at 66 (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)) (holding that Congress has not abrogated a state's Eleventh Amendment immunity under 42 U.S.C. § 1983).   While a state may voluntarily invoke the jurisdiction of the federal courts when a state or agency removes a case to federal court, *Meyers*, 410 F.3d at 255, Plaintiffs initiated this case in federal court and Defendants responded by promptly filing the present Motions [18] [20] to Dismiss and for Qualified Immunity.  Defendants did not voluntarily invoke the jurisdiction of the Court, and the State of Mississippi has not made any clear declaration that it intends to submit itself to federal-court jurisdiction.  *See id.* at 241.

The State of Mississippi has waived its immunity under state law from claims for money damages arising out of the torts of its employees who act in the course and scope of their employment; however, Mississippi "expressly preserved its sovereign immunity to suit in federal court when it enacted the Mississippi Tort Claims Act." *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (citing Miss. Code. Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts.")); *see* Am. Compl. [6] at 11 (seeking monetary and injunctive relief under the MTCA).

Because Congress has not abrogated, nor has Mississippi waived, its Eleventh Amendment immunity from suit, *see* 42 U.S.C. §1983; *Will*, 491 U.S. at 66; *McGarry*, 355 F. App'x at 856, the Eleventh Amendment prohibits this Court from adjudicating Plaintiffs' federal- and state-law claims against the MDPS, and they must be dismissed without prejudice, *see United States v. Tex. Tech Univ.*, 171 F.3d 279, 286 n.9 (5th Cir. 1999) (holding that because sovereign immunity deprives the court of jurisdiction, such claims can only be dismissed without prejudice).

2.   Plaintiffs' claims against Defendants Santa Cruz and Fisher in their official capacities

"[I]n the context of lawsuits against state and federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017).  Where officers are sued in their personal capacities, the individual is the real party in interest; however, where officers are sued in their official capacities, the government entity, not the named official, is the real party in interest.  *Id.* at 1291.  "Defendants in an official-capacity action may assert sovereign immunity[, b]ut sovereign immunity does not erect a barrier against suits to impose individual and personal liability."  *Id.* (internal quotation marks and citations omitted).

"[T]he jurisdictional bar imposed by the Eleventh Amendment applies 'regardless of the nature of the relief sought.'" *McGarry*, 355 F. App'x at 856 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).  In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court created a limited exception

11

to Eleventh Amendment immunity, generally permitting a plaintiff to sue officers in their official capacities to obtain prospective injunctive or other equitable relief. *Id.*; *Pennhurst*, 465 U.S. at 106.

However, "[a] federal court's grant of relief against state officials on the basis of *state* law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst*, 465 U.S. at 106 (emphasis added). For this reason, where a "plaintiff alleges that a state official has violated *state* law," the *Ex parte Young* doctrine is inapplicable. *Id.* (emphasis added) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

The foregoing authority directs that Plaintiffs' official-capacity claims against Defendant Fisher under both Mississippi law and federal law are precluded by sovereign immunity, subject to the *Ex parte Young* exception. Here, Plaintiffs also seek a declaratory judgment that Defendant Fisher in his official capacity violated federal law when Plaintiffs were terminated. Am. Compl. [6] at 11. Because this would require the Court to determine whether Defendant Fisher violated federal law in the past, this requested relief is retroactive and therefore also barred by the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[T]he [*Ex part Young*] exception . . . does not permit judgments against state officers declaring that they violated federal law in the past."). The Court therefore lacks jurisdiction to hear the aforementioned claims against Defendant Fisher, and they will be dismissed without prejudice. *See Tex.*

12

*Tech Univ.*, 171 F.3d at 286, 286 n.9.  Plaintiffs' federal-law claims for prospective

injunctive relief against Defendant Fisher in his official capacity are not barred by

the Eleventh Amendment, and the Court will address them separately.  *See*

*McGarry*, 355 F. App'x at 856.

With respect to Plaintiffs' federal- and state-law claims against Defendant

Santa Cruz in his official capacity, the official-capacity claims against him are

duplicative because Defendant Santa Cruz is no longer in office and Plaintiffs have

advanced the same claims against Defendant Fisher in his official capacity.  *See*

*Lewis*, 137 S. Ct. at 1290-91 (holding that where officers are sued in their official

capacities, the government entity is the real party in interest) ("[W]hen officials

sued in their official capacities leave office, their successors automatically assume

their role in the litigation.").  As such, Defendant Santa Cruz in his official capacity

is not a proper defendant.  *See id.*  Even if he were, the claims against him would be

subject to dismissal for the same reasons those against Defendant Fisher in his

official capacity must be dismissed.

C.    Plaintiffs' claims against Defendant Santa Cruz in his individual capacity
      and against Defendant Fisher in his official capacity for prospective
      injunctive relief

      1.    State-law claims against Defendant Santa Cruz in his individual
            capacity

Defendants contend that the Court should dismiss Plaintiffs' state-law claims

against Defendant Santa Cruz in his individual capacity because neither state law

nor the MTCA afford a right of action against individual defendants.  Mem. in

Support [19].  The Supreme Court of Mississippi has held that exceptions to

Mississippi's employment-at-will doctrine are limited to liability on the part of the employer. *DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 358-59 (Miss. 2008). Here, Defendant's employer was the MDPS.

In addition, the MTCA provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties . . . ." Miss. Code. Ann. § 11-46-7(2); *see Papagolos v. Lafayette Cty. School Dist.*, 972 F. Supp. 2d 912, 933 (N.D. Miss. 2013). There has been no suggestion that Defendant Santa Cruz acted outside the course and scope of his employment. *See* Am. Compl. [6]. As such, Plaintiffs' state-law claims against Defendant Santa Cruz in his individual capacity should be dismissed with prejudice.

2. <u>Federal-law claims against Defendant Santa Cruz in his individual capacity and against Defendant Fisher in his official capacity for prospective injunctive relief</u>

At this juncture, the only remaining claims the Court has not addressed are: (1) Plaintiffs' federal-law claims against Defendant Santa Cruz in his individual capacity; and (2) Plaintiffs' federal-law claims for prospective injunctive relief against Defendant Fisher in his official capacity. With respect to these claims, Defendants take the position that Plaintiffs have failed to state a First Amendment retaliation claim upon which relief can be granted. Mem. in Support [19] at 8-10. In the alternative, Defendants maintain that Defendant Santa Cruz in his individual capacity is entitled to qualified immunity. *Id.* at 10-13.

a.  Failure to state a claim for First Amendment retaliation

(i)  Retaliation claims under the First Amendment

The Amended Complaint asserts that Defendants violated Plaintiffs' First Amendment free speech rights by terminating them in retaliation for reporting Internal Affairs' ghost-ticket investigation to the NHTSA.  Am. Compl. [6].  Defendants maintain that Plaintiffs have failed to allege any speech that was protected under the First Amendment.  Mem. in Support [19] at 8-9.

An individual may assert a § 1983 claim against any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates that individual's rights under the Constitution.  42 U.S.C. §1983.  "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  To establish a claim for employment retaliation related to speech under the First Amendment, a plaintiff must show that:

> (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action.

*Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Nixon v. Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).  An employee's speech qualifies for First Amendment protection where the employee speaks "as a citizen on a matter of public concern."  *Garcetti*, 547 U.S. at 418.

Plaintiffs assert that they were terminated "as a direct and proximate result of their meeting, planning, and notifying [the] NHTSA of the falsely claimed

15

overtime made pursuant to the 'ghost tickets.'"  Am. Compl. [6] at 6-7.  As such, they have sufficiently alleged the first and fourth elements of a retaliation claim, so the Court will focus on the second element,[8] whether the speech that they allege caused their termination was "made pursuant to [their] duties or as [ ] citizen[s] on a matter of public concern." *Cutler v. Stephen F. Austin Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).  "[A] public employee's speech is made pursuant to his official duties when that speech is 'made in the course of performing his employment,' whether or not that speech was specifically 'demanded of him.'"  *Anderson*, 845 F.3d at 595 (quoting *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)).

In *Garcetti v. Ceballos*, a prosecutor alleged that he was terminated for drafting and disseminating a disposition memorandum which recommended dismissal of a case based upon "perceived inaccuracies" he believed were used to obtain an underlying warrant.  547 U.S. at 420-26.  The United States Supreme Court determined that the prosecutor drafted the memorandum pursuant to his job duties, and thus it did not constitute protected First Amendment speech.  *Id.* Neither the fact that the memorandum concerned the subject of the prosecutor's employment, nor the fact that he shared it within the office, were dispositive.  *Id.* at 420-21.  Instead, the Court reasoned that the prosecutor's memorandum was made "pursuant to his duties" because it was work "he was employed to do" and such "[o]fficial communications have official consequences, creating a need for substantive consistency and clarity."  *Id.* at 421-23.  The Supreme Court added that

_____

[8] Because the Court finds that Plaintiffs have not sufficiently alleged that they spoke as citizens rather than employees, the Court need not address the third element.

the "displacement of managerial discretion by judicial supervision finds no support in our precedents," *id.* at 423, and that the "proper inquiry is a practical one," *id.* at 424-25.

The Supreme Court later cautioned that the critical question "is whether the speech at issue is itself *ordinarily* within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014) (emphasis added).  In *Lane v. Franks*, the plaintiff-employee, who was the director of a state-wide nonprofit program, testified pursuant to a subpoena before a federal grand jury that was investigating a former state official's misconduct committed before the plaintiff terminated the official from the non-profit.  *Id.* at 239-241.  The Court held that even though the plaintiff learned of the subject matter of his testimony during the course of his employment, his testimony or speech occurred as a citizen on a matter of public concern.  *Id.*

"[W]hen employees speak outside of their chain of command and outside of their job duties[,] they are entitled to First Amendment protection." *Anderson*, 845 F.3d at 602; *Gibson v. Kilpatrick*, 773 F.3d 661, 670 (5th Cir. 2014) (recognizing that "whether the employee's complaint [is] made within the chain of command or to an outside actor" is an important, but not dispositive, factor in determining whether communication was pursuant to official duties)*; see Johnson v. Halstead*, 916 F.3d 410, 423 (5th Cir. 2019) (noting same).

In *Howell v. Town of Ball*, the Fifth Circuit held that a police officer's reporting to and subsequent cooperation with the FBI in investigating his town

17

mayor's misconduct could be entitled to First Amendment protection.  827 F.3d 515, 523-24 (5th Cir. 2016) (affirming district court's dismissal of claims on qualified immunity but reversing its finding that an officer's speech was not entitled to First Amendment protection).   The officer in *Howell* asserted that his cooperation, which consisted in part of recording conversations, was not part of his normal job duties. *Id.* at 524.  The defendants had offered no evidence to the contrary, other than a general description of an officer's professional responsibility to "detect and prevent crime."  *Id.*  The Court emphasized that the plaintiff made his statements to the FBI "outside the normal chain of command and without the knowledge or permission of anyone else in the police department."  *Id.* (citing *Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008) (holding that statements to "external, unrelated entities" were protected where it was "not within [the plaintiff-auditor's] job function to communicate with outside police authorities" and such communications had not happened in the past)).

Applying the foregoing precedents, the Fifth Circuit affirmed a district court's denial of a motion to dismiss in *Anderson v. Valdez*, 845 F.3d at 602.  In that case, the plaintiff was a former briefing attorney who claimed employment retaliation after he reported allegations of judicial misconduct on the part of the chief judge. *Id.* at 586-87.  The Court found that the plaintiff's speech was clearly a matter of public concern as it disclosed corruption and impropriety, and the plaintiff had expressly, and thus sufficiently, pled that his speech was made outside the scope of his official duties as a briefing attorney and that it occurred "on his own initiative."

18

*Id.* at 586-87, 599.  As the Court saw it, if the plaintiff had a duty to report such misconduct, "why would he have purposely concealed his doing so?" *Id.*

### (ii)   Plaintiffs' First Amendment retaliation claims

In this case, Plaintiffs communicated with the NHTSA about an alleged investigation into misconduct within the MDPS that was connected to federal grants, "a subject undoubtedly of public concern." *Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 574 (5th Cir. 2004) (finding that "a public employee speaking out about alleged corruption in the police department" is "a subject undoubtedly of public concern"); *Branton v. City of Dallas,* 272 F.3d 730, 740 (5th Cir. 2001) ("Exposure of official misconduct, especially within the police department, is generally of great consequence to the public.").  Thus, this Court need only resolve the question of whether Plaintiffs were speaking as citizens or pursuant to their official duties. *See Anderson*, 845 F.3d at 600.

The Amended Complaint [6] alleges that the grants at issue were awarded by the NHTSA to the Mississippi Office of Highway Safety, and that the Governor appointed Plaintiff Corn as the "Governor's representative for the Mississippi Office of Highway Safety." Am. Compl. [6] at 3.  After learning of the possible "ghost-ticket" investigation, Plaintiff Corn reported this information to the NHTSA by e-mail and then by telephone. *Id.* at 5.

According to the Amended Complaint [6], Plaintiff Corn first reported the investigation to the Highway Patrol and individuals within the MDPS on October 3, 2016, and on October 5, she notified the NHTSA. Am. Compl. [6] at 4-5.  On

October 6, Plaintiff Corn "followed up her telephone conversation to Brian Jones of the NHTSA" and copied individuals within the MDPS and Highway Patrol, including Defendant Santa Cruz, on her e-mail.  *Id.* at 5.

Plaintiffs have not alleged that their initial report or their report to the NHTSA fell outside their chain of command.[9]  Indeed, the facts as set forth by Plaintiffs essentially allege that they reported the Internal Affairs investigation up, but "within the chain of command."  *Gibson*, 773 F.3d at 670.  Unlike the officer in *Howell*, Plaintiffs did not conceal their reporting of the misconduct to an outside authority.  827 F.3d at 523.  Rather, more like the memorandum in *Garcetti*, it appears as though Plaintiffs' communications had official consequences and were made pursuant to their official duties.  547 U.S. at 422-23.

Unlike the briefing attorney in *Anderson*, Plaintiffs did not take any steps to conceal their actions; instead Plaintiff Corn copied superiors and coworkers on her e-mail to the NHTSA grant administrator.  *See* 845 F.3d at 586-87.  Plaintiffs do not allege that they spoke "without the knowledge or permission of anyone else" at MDPS; instead they took steps to alert their employer of their actions.  *See Howell*, 827 F.3d at 524.

---

[9] Although the Court has not considered or taken judicial notice of the documents attached to Plaintiffs' Responses, Plaintiffs do submit an Affidavit of Plaintiff Corn.  Corn Aff. [27-2].  The Affidavit [27-2] states that Plaintiff Corn also reported the investigation to the State Auditor, who was not in her chain of command, and to the Governor's Senior Criminal Justice Policy Advisor; however, nowhere in the Amended Complaint or in the Affidavit does Plaintiff Corn claim that she was terminated as a result of these communications.  *Id.*; Am. Compl. [6] at 6-7.  Rather, Plaintiffs explicitly allege that they were terminated "as a direct and proximate result of their meeting, planning, and notifying [the] NHTSA of the falsely claimed overtime made pursuant to the 'ghost tickets.'"  Am. Compl. [6] at 6-7.  Moreover, the Governor's Advisor would appear to fall within Plaintiff Corn's chain of command, as she maintains that she was the Governor's representative for the Mississippi Office of Highway Safety.  *See id*; Corn Aff. [27-2].

In further contrast to the plaintiff in *Anderson*, Plaintiffs here have nowhere expressly alleged that their reporting to the NHTSA fell outside the scope of their ordinary official duties.  *See* 845 F.3d at 586-87; Am. Compl. [6].  Nor have they done so indirectly.  Am. Compl. [6].  Plaintiffs do not plead that their actions were not within their job responsibilities or duties with the MDPS or as the Governor's representative, nor do they even allege in the Amended Complaint [6] that they spoke in their capacities as private citizens.  *Id.*  Finally, Plaintiffs have not offered any descriptions of their job duties or the responsibilities their positions entailed; thus, the record does not reveal how their speech would have fallen outside of those duties.[10]

Indeed, because the NHTSA grants were "produced" by Plaintiffs, *see id.*, and were administered through the Mississippi Office of Highway Safety, where Plaintiffs worked, the sparse to non-existent facts pled by Plaintiffs to describe their job duties indicate that part of Plaintiff Corn's ordinary responsibilities may well have included monitoring and reporting on activities related to the administration of grants such as these, *see id.*

Plaintiffs argue, however, that their continued communications as witnesses in the ongoing federal investigation regarding the alleged misconduct is enough to support their retaliation claim.  Resp. Mem. [28] at 10, 14 n.9.  The problem with this argument is that the Amended Complaint [6] does not contain any allegation

---

[10] In fact, with respect to Plaintiff Jennings, Plaintiffs have explicitly pled that "at all times material [she] acted as Plaintiff Corn's assistant," thus indicating that, to the extent she engaged in any speech, she was acting within the scope of her job duties.

that either Plaintiff was terminated because of any ongoing communications. *See* Am. Compl. [6]. The Amended Complaint [6] does contain a statement that "Plaintiffs *have remained* in contact with the NHTSA officials and investigators and *remain* subject to subpoena to testify concerning these matters," *id.* at 5 (emphasis added), but Plaintiffs are explicit in their Amended Complaint [6] that it was the report to the NHTSA which precipitated their discharge, *id.* at 5-6.

Moreover, even if it could be found that Plaintiffs' continued communications led to their termination, the Fifth Circuit has recently rejected a similar argument. *See Anderson v. Valdez*, 913 F.3d 472, 278 (5th Cir. 2019) (reversing the district court's denial of summary judgment and holding that the defendant was entitled to qualified immunity). Specifically, on a second appeal to the Fifth Circuit in *Anderson*, the judicial assistant who brought suit argued that his communications with police after he made his initial complaint to the judicial conduct board supported his retaliation claim. *Id.* The Fifth Circuit concluded that if the employer "was entitled to discipline [plaintiff] for his initial speech as an employee, then [plaintiff] cannot escape the discipline of his employer for breach of his employee duties by going public with the same speech." *Id.* Here, because Plaintiffs have not alleged or shown that the initial reports to the NHTSA fell outside the scope of their ordinary job duties, it seems that a similar result would obtain with respect to any ongoing communications. But again, this allegation is absent from the Amended Complaint [6].

Plaintiffs' Response [28] next advances policy arguments to support their

position.  It is not appropriate for the Court to decide this case based upon policy arguments, and the Court declines to do so.  Plaintiffs contend that, like the plaintiff in *Lane* who would have faced perjury charges if he had given false testimony under oath, so too would Plaintiffs have been subject to prosecution for misprision of a felony.  Resp. Mem. [28] at 21-23.  The Court is not persuaded by this reasoning.[11]  The Supreme Court in *Lane* did state that:

> It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials . . . *may never* form the basis for a First Amendment retaliation claim.  Such a rule would place public employees who witness corruption in an impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs.

573 U.S. at 240-41 (emphasis added).  The Supreme Court also recognized in *Garcetti* that "exposing governmental inefficiency and misconduct is a matter of considerable significance," but noted that there are "other applicable constitutional provisions and mandates of the criminal and civil laws [that] protect employees . . . ."  547 U.S. at 426.

Here, it is also possible that other protections may exist for Plaintiffs.[12]  However, the First Amendment does not protect Plaintiffs' speech in this case because they have not alleged or otherwise shown that it was made outside the scope of their job duties.  *Garcetti*, 547 U.S. at 426.  "The fact that what was being

---

[11] "[M]ere failure to report a felony is not sufficient. Violation of the misprision statute additionally requires some positive act designed to conceal from authorities the fact that a felony has been committed." *United States v. Davila*, 698 F.2d 715, 717 (5th Cir. 1983).  Based on the allegations in the Amended Complaint [6], at the time Plaintiffs reported the possible Internal Affairs investigation they did not purport to have "knowledge of the actual commission of a felony," nor had they taken any action to "conceal" any such knowledge.  18 U.S.C. § 4.

[12] Plaintiffs have in fact alleged a violation of state law that may offer such protection; but, the Court simply does not have jurisdiction over these claims based upon the Eleventh Amendment.

reported in this case was public corruption does not change the result—*Garcetti*'s rule is a broad one, and it must be applied even where it may lead to a potentially distasteful result in an individual case." *Gibson*, 773 F.3d at 671.

Construing Plaintiffs' factual allegations in the light most favorable to them, they have failed to allege sufficient facts to state a First Amendment retaliation claim. *See* Fed. R. Civ. P. 12(b)(6). For this reason, Plaintiffs' remaining federal-law claims against Defendant Santa Cruz in his individual capacity and those against Defendant Fisher in his official capacity for prospective injunctive relief should be dismissed with prejudice.

> (iii)  Qualified immunity as to Plaintiffs' claims against Defendant Santa Cruz in his individual capacity

Defendants argue, in the alternative, that even if Plaintiffs have stated a First Amendment retaliation claim, Defendant Santa Cruz in his individual capacity is entitled to qualified immunity because he did not violate clearly established law.[13] Mem. in Support [19] at 10-11. Plaintiffs counter that the relevant law in the Fifth Circuit was clearly established. Resp. Mem. [28] at 19.

Qualified immunity protects government officials from individual liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341

---

[13] Defendants appear to recognize that qualified immunity is unavailable to Defendant Fisher in his official capacity. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 371 (5th Cir. 2010) ("[Q]ualified immunity [is] a defense that is only relevant to individual capacity claims.").

(1986)).  Courts apply a two-step analysis to claims of qualified immunity.  First, the Court must determine whether the plaintiff has alleged a violation of a constitutional or statutory right.  *Anderson*, 845 F.3d at 599-600.  If a violation is properly alleged, the Court then considers "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."  *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

To allege a constitutional violation means "that the plaintiff has stated a claim upon which relief may be granted."  *Morgan v. Swanson*, 659 F.3d 359, 384 (5th Cir. 2011).  A right is clearly established where it is "sufficiently clear that a reasonable official" would comprehend his actions violate that right.  *Anderson*, 845 F.3d at 600 (quotation removed).  "[I]n the light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Fifth Circuit has stated that: "[b]y at least 2014, it was clearly established that an employee's speech made externally concerning an event that was not within his or her job requirements was entitled to First Amendment protection."  *Johnson*, 916 F.3d at 522 (quoting *Anderson*, 845 F.3d at 600).  However, it was not "clearly established that an internal complaint of discrimination made only to supervisors . . . qualifies as speech made as a 'citizen' rather than as an 'employee.'"  *Id.*

On the first appeal from the district court's denial of the defendant's motion

25

to dismiss in *Anderson v. Valdez*, the Fifth Circuit held that the plaintiff had sufficiently pled the violation of a clearly established right because his claims did not implicate the distinction between "ordinary" and "non-ordinary" job duties, and he had expressly alleged that: (1) he reported the judicial misconduct concerns externally to his state's commission on judicial conduct; and (2) his complaint to the commission was outside of his job duties. 845 F.3d at 586-87, 601-02 (interpreting the "ordinary" standard set forth in *Lane*). While the "ordinariness" standard had been distinguished in this Circuit by the time of Plaintiffs' termination,[14] the fact remains that Plaintiffs have not alleged what their job duties were, nor have they made any allegations or otherwise shown that they were reporting outside of their chain of command or outside of their ordinary job duties.

Moreover, Plaintiffs assert that while Plaintiff Corn was acting as the Governor's representative for the Mississippi Office of Highway Safety, she reported the internal investigation to the NHTSA, the cooperating agency administering grants that the MDPS received and that Plaintiffs had "produced." Am. Compl. [6]. It was not clearly established at the time of Plaintiffs' termination that candidly reporting up the chain of command, and simultaneously to a cooperating agency, while serving in the capacity in which Plaintiff Corn apparently served in the office administering the grants and as the Governor's representative, constituted clearly established protected First Amendment speech. As such, the record supports the conclusion that, in the alternative, Defendant Santa Cruz in his individual capacity

---

[14] The Fifth Circuit decided *Howell* on July 1, 2016. Plaintiffs' alleged speech and Defendants' actions occurred in October and November of that year. *See* Am. Compl. [6].

is entitled to qualified immunity.

Finally, although Defendants' Motions [18] [20] placed Plaintiffs on notice of the potential deficiencies in their Amended Complaint [6], they have not made any further request to amend their pleadings, they have not filed any motion seeking to make such an additional amendment, and they have not stated any facts that may remedy these deficiencies.[15]  Plaintiffs have responded to Defendants' invocation of qualified immunity, and the Court has evaluated their claims.  *See* Resp. Mem. [28]. As such, Plaintiffs' claims against Defendant Santa Cruz in his individual capacity should be dismissed with prejudice.

### III.  CONCLUSION

To the extent the Court has not specifically addressed any of the arguments raised by the parties, the Court has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants' Motions [18] [20] to Dismiss and for Qualified Immunity are **GRANTED**.  Plaintiff Penny Nichols Corn's and Plaintiff Twyla Jennings' claims against Defendant Albert Santa Cruz in his individual and official capacities are all **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Penny Nichols Corn's and Plaintiff Twyla Jennings' claims against Defendant Marshall Fisher in his official capacity are **DISMISSED WITHOUT PREJUDICE**, on

---

[15] The Plaintiffs have submitted Affidavits [27-2] [27-8] and other documents with their Response [27] [28].  As the Court has noted, even considering these materials they would not alter the result.

grounds of Eleventh Amendment immunity, with the exception of their claims against Defendant Marshall Fisher in his official capacity for prospective injunctive relief, which are **DISMISSED WITH PREJUDICE**.

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Penny Nichols Corn's and Plaintiff Twyla Jennings' claims against Defendant Mississippi Department of Public Safety are **DISMISSED WITHOUT PREJUDICE**, on grounds of Eleventh Amendment immunity.

      A separate judgment will be entered in accordance with this Order, as required by Rule 58 of the Federal Rules of Civil Procedure.

      **SO ORDERED AND ADJUDGED**, this the 29th day of March, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE